## L. H. WODDROP v. W. F. THACHER.

ERROR TO THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY.

Argued October 7, 1887—Decided November 7, 1887.

1. When in an action of slander, in which the defendant is charged with having spoken of the plaintiff, " he embezzled and stole from us over eight thousand dollars," it is agreed that the defendant may introduce evidence under the plea of not guilty with the same force and effect as if introduced under the plea of justification, and on the trial evidence is introduced tending to show that the words spoken were true, the jury should be distinctly instructed that, if they are satisfied that the words spoken were true, the plaintiff could not recover.
2. In such a case, with such an agreement, the equivalent of a formal plea of justification, it is error to affirm a point that " the defendant, to sustain a plea of justification, must prove the same character and weight of evidence as would convict the plaintiff if criminally indicted for larceny and embezzlement," with the qualification, " that this is a correct general statement of the law applicable thereto, but there is no plea of justification filed in this case."

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 120 October Term 1887, Sup. Ct.; court below, No. 62 December Term 1886, C. P.

The case below was capias in case for slander, brought on October 1, 1886, by Watson F. Thacher against Lemuel H. Woddrop.

The declaration, which was in two counts, charged the defendant with having falsely and maliciously spoken and published of and concerning the plaintiff the words " Thacher embezzled and stole from us (meaning the defendant's father) over eight thousand dollars." The plea was not guilty.

At the trial on February 25, 1887, before THEOPHILUS S. WILSON, P. J., after the testimony on the part of the plaintiff in chief was closed, the following minute was made upon the stenographer's notes :—

By agreement of counsel the defendant is permitted to intro-

duce evidence under the plea of not guilty with the same force and effect as if introduced under the plea of justification, upon the condition that the defendant calls and examines Andrew J. Maloney, Esq., Benjamin C. Welsh and Lemuel H. Woddrop, and also introduces the evidence of the detectives and of Mr. Shaffer and Mr. Nelson, which was taken, on the part of the defendant in this case, at Philadelphia.—

The facts of the case sufficiently appear in the charge to the jury which was as follows:—

[The plaintiff, Watson F. Thacher, to maintain the issue on his part offered evidence to show that he was from January, 1869, to May, 1885, a member of the firm of Thacher & Co., wholesale boot and shoe dealers in Philadelphia, and was the active member of the firm, managing, buying and selling goods, with full authority to employ and discharge all employees and was also a traveling salesman for the firm, and in that capacity traveled through the counties of Jefferson, Clarion, Forest, Elk, Clearfield and Cameron, and in parts of the states of New Jersey, Delaware and Maryland, and took orders for the goods sold by his firm. In July, 1885, he started out as a traveling salesman for Bell, Walt & Company, wholesale sellers of boots and shoes, of Philadelphia; and his sales or orders in the territory through which he traveled had fallen off two thirds from what they were on his first trip, although he was selling the same line of goods, of equal quality, and upon the same or almost the same terms as given by Thacher & Co. ; that where once he had been welcomed by his friends, many of whom he had known for twenty years, and treated in a hospitable way, he now saw a cold indifference, and to-day the finger of suspicion is pointed at him, and his credit was undoubtedly affected; that he did not know the reason of the changed action of his customers toward him until he was informed by Mr. W. C. Mayne, an attorney of Philadelphia, of certain declarations made to him by Lemuel H. Woddrop, the defendant, derogatory to Mr. Thacher's reputation and credit,] [1] which were substantially these :

On the 9th of August, 1886, the defendant stated to Mr. Mayne, at Emporium, Cameron county, that Mr. Watson F. Thacher was no longer a member of the firm of Thacher & Co.; that he was the biggest scamp that came to the country,

Charge of Court below.

and he had embezzled and stole from them eight thousand dollars; that Mr. Shaffer, a brother-in-law of Mr. Thacher, found it all out by seeing Mr. Thacher sell goods in the store at retail, put the money in his own pocket book and make no return of it; and by watching him at the dinner hour, when Mr. Thacher would have a drayman come to the store and haul away goods to the auction houses, of which he would make no returns; and Mr. Shaffer went to the defendant's brother, C. W. Woddrop, in Hughsville, and told him about it, and that Mr. Thacher was selling, and if he did not come down he would have the store gutted out; that they employed detectives and a sharp lawyer, and their lawyer told them to have Mr. Thacher come to his office; they got Mr. Thacher into the lawyer's office and they charged him with larceny and embezzlement, and he was so badly frightened when they threatened to prosecute and publish him, that he made an assignment of his interest in the firm to them without their paying a cent. At this interview the defendant said his father was a partner in the firm and the stealing was from his father. The substance of these declarations, in detached portions, was communicated at different times to L. Burge, M. F. Flaherty, W. M. Andrews, J. F. McNutt, I. S. Rosenberger, R. A. Rogers, C. C. Gibson, and H. J. Smith, varying according to the questions of these persons, some of the answers being in response to inquiries and others not.

The defendant to maintain the issue on his part introduced evidence substantially to the effect that he was employed by the firm of Thacher & Co., in January, 1881, as assistant bookkeeper and salesman, and so remained until the dissolution of the firm on the 14th day of May, 1885. The firm of Thacher & Co. was composed of Watson F. Thacher and Dr. Robert S. Woddrop, the defendant's father; the capital stock of the firm was ten thousand dollars, put in by Dr. Woddrop, with a loan to the firm of an equal amount, and fifty-three hundred dollars put in by Mr. Thacher, and they were equal partners. Dr. Woddrop died June 1, 1885, after which the business was continued by his executor and two sons, one of whom is the defendant. The defendant is not a partner but receives a salary from the firm, and is worth from seven to nine hundred dollars, and he has no interest in any other business. . . . . . .

Dr. Woddrop was in ill health and ceased to attend to any business after the year 1884. The defendant was informed by Mr. Shaffer of the alleged irregularities in the house, and together they found that goods were sold by Mr. Thacher in the house and no return made of such sales; that goods were removed from the storehouse of Thacher & Co. to auction houses by a drayman, in cases or cartons, and their sales never reported; the defendant examined the books of the firm and found that neither the sales at retail nor the sales at auction had been entered on the books; and then he, with his brother, C. W. Woddrop, and his uncle, Benjamin G. Welsh, consulted an attorney, Andrew J. Maloney, and employed detectives; Mr. Welsh and Mr. Maloney met Mr. Thacher in Mr. Maloney's law office, and the defendant was fully informed of the details of the interview there.

The defendant further explained what occurred at the meeting with Mr. Mayne at Emporium, and distinctly stated he did not use the words "larceny" and "embezzlement," and said that to Mr. Burge, Mr. Andrews, Mr. Flaherty and Mr. Smith, he did not use the precise words testified to by them, but used different words, imputing neither larceny nor embezzlement against Mr. Thacher.

The methods employed to investigate the alleged irregularities on the part of Mr. Thacher, resulting in bringing him to the law office of Mr. Maloney, were explained. From the history of the interview on the 14th of May, 1885, it appeared that after Mr. Thacher arrived at the office he met Mr. Maloney and Mr. Benjamin G. Welsh; Mr. Maloney informed him of his suspicious acts in connection with the firm of which he was a member, read to him a part of the report furnished by the detective agency, involving him in dishonest acts, supplemented this with evidence of the transactions; Mr. Thacher admitted the accusations were true; said at first the amount was only a few hundred dollars and he would return it, that he had money deposited at various places, and a certificate of deposit, aggregating six or seven thousand dollars, and would turn this over immediately in restitution. After a brief negotiation a settlement was effected whereby Mr. Thacher assigned his interest in the firm of Thacher & Co. to the legal representative of Dr. Woddrop, which was subsequently consum-

mated by the execution of the papers, and his interest in the firm bank account was relinquished. After leaving the bank Mr. Thacher returned to the store, and after taking his personal effects, left, but before going, he requested Mr. C. W. Woddrop to walk with him to the ferry, a few blocks away; as they walked along Mr. Thacher said he had admitted doing what he was accused of, but said he was no hardened villain or ordinary thief; he had done these things as he had an expensive place to keep up, and he knew Dr. Woddrop was going to die and he supposed the boys would want to take their money out of the firm, and if so, he could not carry on business; so he had been sending goods to auction and selling goods and had laid away the money to go into business for himself when the Woddrops should go out of the firm; he further said he did not want to wrong them but expected in some way to return the money. The bill of sale, release, and other papers relating to the several transactions were admitted in evidence and may be inspected and read by the jury.

In rebuttal, the plaintiff was called who testified that he never sent any goods to auction and made no returns, and did not sell goods in the store belonging to the firm as shown against him; that for upwards of twenty years his customers throughout the state and country had returned goods to him individually for private sales and sale at the auction houses in Philadelphia, in the name of Thacher & Co.; that he collected the proceeds and accounted to the persons entitled because that was the correct way to do the business; the transactions did not become any part of the business of the firm except so far as the senders of the merchandise were indebted to his firm, then the amount was deducted and credited to the debtor on the firm books and the remainder remitted; and where they were not indebted the net proceeds were remitted directly by him; that the drayman took the goods from the store at different hours of the day, and he (Mr. Thacher) paid him; that it did not belong to the house to pay that; the transactions were larger in 1884; J. H. Hagerty, of Elk county, sent a large amount of boots and shoes to be disposed of at the auction houses in Philadelphia by Mr. Thacher, which was done; the proceeds were twenty-three hundred dollars, and after deducting the sum of two thousand

dollars and interest, loaned by plaintiff's wife to Mr. Hagerty, the residue was returned. Other transactions of this kind were introduced to negative intent on the part of Mr. Thacher, the names and details of which were corroborated by the statements of Mr. Hagerty, Joseph Rexer and Edward Tim.

Mr. Thacher further testified, giving his version of the interview and action of the parties at the law office of Mr. Maloney, denying his statements and conduct on that occasion, shown by the evidence of the other persons present, saying that he was threatened with prosecution and publication of the accusations there alleged against him, and was frightened into doing what was required of him; that he believed his partner, Dr. Woddrop, would on request relieve him from the effects of the proceedings. He further gave evidence of his unfit physical condition on the 14th of May, 1885, whereby he was unfit to perform any such business matters as transpired that day, and offered the testimony of his attending physician at the time, giving his condition and want of exercising proper judgment in that matter. . . . . .

The plaintiff requests the court to charge the jury:

1. Embezzlement and larceny are indictable offences and therefore, to charge a party falsely and maliciously with them or either of them is slander.

Affirmed.[5]

2. It is a misdemeanor subject to indictment for a member of a copartnership to keep fraudulent accounts, or receive any money or property of such copartnership, and make no account of them to the other members of the firm, since June 4th, 1885.

Affirmed.[6]

3. The defendant having attempted to establish a justification, the proof must be as broad as the charge.

Affirmed under the agreement of counsel.[7]

4. If the plea of justification is unsupported, it is evidence of actual malice and goes in aggravation of damages.

There is no plea of justification pleaded in this case by the defendant, and under the offer of plaintiff's counsel that evidence of justification should not be received to enhance damages, this point is refused.

5. The defendant, in order to sustain the plea of justification, must prove the same character and weight of evidence as would convict the plaintiff if criminally indicted for larceny and embezzlement.

Affirmed, with the qualification that this is a correct, general statement of the law applicable thereto; but there is no plea of justification filed of record in this action.[8]

6. The slanderous words which affect a man's business are as injurious as slander of his character, and are clearly within the definition of the law; and therefore, if the jury believe that the defendant uttered and published the words, "Thacher embezzled and stole from us over eight thousand dollars," to and among the customers of the plaintiff, the law presumes that the damage will arise and affect him in his commercial standing, as well as subject him to a criminal prosecution and injure him socially.

Affirmed.[9]

7. That if you believe that plaintiff suffered any special loss of trade, your verdict should include damages compensatory therewith, in addition to that presumed by the law which would accrue from the words spoken.

Affirmed.[10]

8. The position in life and family of the plaintiff should also be taken in consideration on the question of damages, although not laid in the declaration.

Affirmed.

9. That in the assessment of damages the jury may take in consideration (1) the pain and worriment of mind of plaintiff occasioned by the exposures to the fines and penalties of the criminal laws of this commonwealth. (2) The injury to his reputation. (3) The loss of trade and property occasioned. (4) The circumstances of indignation and contumely under which the wrong was done and the consequent public disgrace of plaintiff, together with any other circumstance belonging to the wrongful act and tending to the plaintiff's discomfort.

Affirmed.[11]

10. Words spoken of a tradesman imputing to him fraudulent conduct in the transaction of business are actionable in themselves without proof of special damages.

Affirmed.[12]

Charge of Court below.

11. In an action of slander the plaintiff may claim more than compensation. He may not only recover damages for injury to his reputation but may also recover punitive damages to punish the defendant for the indulgence of his malice.

Affirmed.

The defendant's counsel requests the court to instruct the jury:

1. Words must be construed with reference to their subject matter, and as the defendant's words as proven, expressly referred to transactions between plaintiff and his partner doing business as Thacher & Co., and such transactions were not at the time criminal or indictable, plaintiff cannot, under the pleadings in this case, recover.

Refused.[13]

2. To recover, the plaintiff must prove that the words laid in the narr. were spoken by the defendant of and concerning the plaintiff, and that they charge an actual criminal offence on the part of the plaintiff as a member of the firm of Thacher & Co., and they were so understood by the witnesses who heard them, and failing to prove all these, under the pleadings in this case the plaintiff cannot recover.

Affirmed.

3. If the plaintiff has failed to prove that the defendant charged him with a criminal and indictable offence, known as such to the law, he cannot under the pleadings in this case recover.

Affirmed.

In slander under the plea of not guilty evidence of the truth of the words charged in the declaration is not admissible, but the defendant may prove in mitigation of damages such facts as show a ground of suspicion not amounting to actual proof of the plaintiff's guilt, but not as justification; the plea of justification admits the speaking of the words charged in the declaration as therein alleged and avers that the defendant was justified in speaking them, because they were true; in such case the plaintiff is put upon a defence of his life as to the acts charged. By agreement of counsel the defendant was permitted in this trial to introduce evidence under the plea of not guilty with the same force and effect as if introduced under the plea of justification. The effect of this agreement

was understood not to enhance damages if the proof failed to satisfy the jury of the truth of the facts, no plea of justification having been filed by the defendant. . . . .

The jury are further instructed that if from the evidence, under the instructions of the court, they find the defendant guilty, then in fixing the amount of the plaintiff's damages they may take into consideration the mental suffering produced by the utterance of the slanderous words, if they believe from the evidence that such suffering has been endured by the plaintiff, and the present and probable injury, if any, to plaintiff's character which the uttering of the words were calculated to inflict. The law implies damages from the speaking of actionable words in an action for slander, and also that the defendant intended the injury the slander is calculated to effect; [and in this case if the jury believe from the evidence and under the instructions of the court that the defendant is guilty as charged in the declaration, then they are to determine from all the facts and circumstances proved what damages ought to be given; and the jury are not confined to the mere pecuniary loss or injury sustained; mental suffering, injury to reputation or character, if proved, are proper elements of damage.] [2]

[Though the jury may believe from the evidence that the defendant was guilty of speaking the slanderous words charged in the declaration, still if the jury find from the evidence that the words were spoken without actual malice on the part of the defendant, though under the circumstances showing a want of caution and a proper respect for the rights of the plaintiff, and that the plaintiff has suffered no special damage from the speaking of the words, then the jury should only give compensatory damages;] [3] and in such case compensatory damages are such as will pay the plaintiff for his expenses and trouble in carrying on the suit and disproving the slanderous words.

[If the jury under the evidence and the instructions of the court find the defendant guilty in this case, in assessing the plaintiff's damages they are not confined to such damages as will simply compensate the plaintiff for such injuries as the evidence shows he has received by reason of the speaking and publishing of the defamatory words charged in the declaration; but they may in addition thereto assess against the defendant by way of punishment to him and an example to

others, such damages as the jury in their sound judgment, under all the evidence in the case, believe the defendant ought to pay, not exceeding the amount of damages claimed in the declaration, provided the jury believe from the evidence that the defamatory words were spoken maliciously or wantonly by the defendant.] [4]

The jury are further instructed that if they find the defendant guilty, then in fixing the amount of plaintiff's damages they may take into consideration in connection with all the other evidence in the case the pecuniary circumstances and social standing of the defendant, and the character and standing of the plaintiff, his position in life, and of his family, so far as those have been shown by the evidence ; and they may also take into consideration the fact, if proved, that the defendant has reiterated the slander on different occasions to different persons. . . . . .

The jury returned a verdict for the plaintiff for $5,000, and judgment was entered thereon.   The defendant then took this writ, assigning for error:

1–4. The parts of the charge embraced in [ ] [1] [2] [3] [4]

5, 6. The answers to the plaintiff's first and second points.[5] [6]

7, 8. The answers to the plaintiff's third and fifth points.[7] [8]

9–12. The answers to the plaintiff's sixth, seventh, ninth and tenth points.[9] [10] [11] [12]

13. The answer to the defendant's first point.[13]

*Mr. W. P. Jenks* (with him *Messrs. Jenks & Clark*), for the plaintiff in error:

1. The words alleged to have been spoken refer distinctly to the time that plaintiff was a member of Thacher & Co., which was before the acts of June 3, 1885, P. L. 60, and June 4, 1885, P. L. 74, making the appropriation of firm assets a misdemeanor, and therefore the words were not actionable: Odg. Lib. & Sland., 73.   The want of discrimination between words actionable in themselves, because of special damages in particular cases, and actionable because spoken of and concerning persons and in disparagement of them in their profession and trade, led to confusion in the statement of principles and their application to facts, which resulted in misleading the jury and to an incorrect finding of damages.

2. There is error in the parts of the charge upon the subject of damages, apparent in this, that the court again confounded the distinction between words actionable and words not actionable, and charged upon the law of damages in actions of slander generally, and not with regard to the particular nature and circumstances of the case on trial.

3. The third and fifth points, the answers to which are assigned as error in the seventh and eighth assignments, were irrelevant under the agreement of counsel and the instructions prayed for should have been denied generally. Nor was the answer to the fifth point true in point of law. It assumed that the words charged to have been spoken subjected the plaintiff to fines and penalties prior to the acts of 1885 referred to. Where words otherwise actionable are explained by reference to a known and particular transaction they are to be construed accordingly: VanRensalaer v. Dole, 1 N. Y., C. P., 279, 325.

4. The plaintiff not having been guilty of any offence known to the law as indictable, and the defendant's words, if spoken, having a distinct reference to a transaction of plaintiff with his partner which at the time of its occurrence was not cognizable or punishable by a court of criminal jurisdiction, there was error in the answers to the plaintiff's sixth, seventh, ninth and tenth points and to the defendant's first point, inasmuch as it was not averred nor proved that the words were spoken of and concerning the plaintiff in relation to his trade or business.

*Mr. Wm. C. Mayne* and *Mr. Thos. H. Neilson* (with them *Mr. W. F. Stewart*), for the defendant in error:

1. The test whether the words spoken are actionable per se is, do they impute an indictable offence of an infamous character? Eckart v. Wilson, 10 S. & R. 44; Smith v. Stewart, 5 Pa. 372; Bash v. Sommer, 20 Pa. 159; Beck v. Stitzel, 21 Pa. 522; Lukehart v. Byerly, 53 Pa. 418; Herst v. Borbidge, 57 Pa. 64; Klumph v. Dunn, 66 Pa. 145; Bricker v. Potts, 12 Pa. 200; Hayes v. Ball, 72 N. Y. 418; Brooks v. Harrison, 91 N. Y. 83. It is the sense in which words are received by the world, which courts ascribe to them on trials of actions for slander: Brown v. Lamberton, 2 Binn. 37; Bornman v. Boyer,

3 Binn. 518; Andres v. Koppenheafer, 3 S. & R. 260; Dotta-
rer v. Bushey, 16 Pa. 204; Peters v. Ulmer, 74 Pa. 402.

2. It is not necessary that the trade be referred to in the
charge; the test is, does the charge necessarily affect him?
Words which cause a loss of custom to a trader are spoken of
him in the way of his trade, and are therefore actionable; and
whether words are spoken of the plaintiff in the way of his
trade is for the jury to determine: Odg. Lib. & S. 64*, 82*,
70*, 315*; 2 Add. Torts, Wood's ed., 348; Phillips v. Hoefer,
1 Pa. 62; Rush v. Cavenaugh, 2 Pa. 187.

OPINION, MR. JUSTICE WILLIAMS:

This case appears to have been tried with care by the
learned judge of the court below. The charge to the jury
was a careful summary of the evidence and the general rules
of law applicable to actions of this class; but in one particular
the court failed to present the case adequately to the jury.

We find in the stenographer's notes of the trial this entry:
" By agreement of counsel the defendant is permitted to intro-
duce evidence under the plea of not guilty with the same force
and effect as if introduced under the plea of justification, upon
condition that he calls and examines A. J. Maloney" and
other persons named. We also find that the plaintiff's counsel
in their third point requested the court to instruct the jury
that " The defendant having attempted to establish a justifica-
tion, the proof must be as broad as the charge." The answer
of the court was: " Affirmed under the agreement of counsel."
It would seem to be very clear, therefore, that one of the most
important questions for the jury was whether the words, if
spoken, were true. This seems also to have been the view of
the plaintiff's counsel, for in their fourth point they asked the
court to instruct the jury that the plea of justification, if
unsupported, should go in aggravation of the damages; and
in their fifth point they asked the further instruction upon
this branch of the case, that the " defendant, in order to sus-
tain the plea of justification, must prove the same character
and weight of evidence as would convict the plaintiff if crim-
inally indicted for larceny and embezzlement." The answer
of the court was: " Affirmed, with the qualification that this is
a correct general statement of the law applicable thereto; but

there is no plea of justification filed in this case." This would
naturally be understood by the jury as equivalent to an instruc-
tion that while in other cases, in order to make a successful
justification, it was necessary for the jury to be satisfied that
the words spoken were true and the crime imputed to the
plaintiff had actually been committed, yet this case was one
to which the rule was not applicable, because there was no
plea of justification filed.

The agreement of the parties entered upon the minutes of
the trial was certainly as effective to open the door to this line
of defence as a formal plea filed could have been, and the jury
should have been distinctly told that, if satisfied that the words
spoken were true, the plaintiff could not recover.

The learned judge had just called the attention of the jury
to the evidence tending to show (we quote from the charge)
that " Mr. Thacher admitted the accusations were true ; said
at first that the amount was only a few hundred dollars, and
he would return it. . . . . . After a brief negotiation a settle-
ment was effected whereby Mr. Thacher assigned his interest
in the firm of Thacher & Woddrop to the legal representatives
of Dr. Woddrop. . . . . . After leaving the bank Mr. Thacher
returned to the store and, after taking his personal effects, left,
but before going he requested Mr. C. W. Woddrop to walk
with him to the ferry, a few blocks away ; as they walked
along Mr. Thacher said he had admitted doing what he was
accused of, but said he was no hardened villain or ordinary
thief. He had done these things, as he had an expensive place
to keep up, and he knew Dr. Woddrop was going to die, and
he supposed the boys would want their money out of the firm,
and if so, he could not carry on the business ; so he had been
sending goods to auction and selling goods, and had laid away
the money to go into business for himself when Woddrop
should go out of the firm." Here was evidence upon which,
if believed, the jury would have been justified in finding in
favor of defendant, but this question was substantially taken
from them by the answer to the plaintiff's fifth point; and
there is reason for fear that the jury understood that they
were to inquire as to the speaking of the words, their effect
upon the plaintiff in his business, and the damages to which he
was entitled, but that they were not to inquire if the words

spoken were true. Indeed it is difficult to see what other conclusion they could have drawn from the answer complained of. The other errors assigned are not sustained.

> Judgment reversed, and venire facias de novo awarded.